The next case on our docket is 21-60039 Chapa v. Garland. Mr. Bray. Good morning, Your Honors, and may it please the Court. My name is John Michael Bray, and I represent the petitioner, Jorge Ayala Chapa, along with my lead counsel, Robert Urenda. There are two issues presented by this case, and I would like to focus my argument this morning on the first issue, which is whether the term of a temporary board member of the Board of Immigration Appeals can be renewed as a matter of law. The second issue is whether the agency, in this case the Board of Immigration Appeals, committed legal error by requiring a showing of unusual or outstanding equities insofar as it failed to follow its own precedent regarding the application of legal standards to undisputed facts. Would the Court like a brief recitation of the facts? Okay. I'll move on. Thank you very much. So the first issue is whether the temporary board member of this case, Megan Foote-Monsky, who decided Mr. Ayala's case was illegally reappointed to a six-month term in violation of the Board of Immigration Appeals regulations. Now, what is the regulation at issue here? It's 8 CFR Section 1003.84. That regulation states, in pertinent part as follows, that the director of the Executive Office for Immigration Review, which is essentially the immigration agency in this case, may in his discretion designate immigration judges, retired board members, and certain others to act as temporary board members for terms not to exceed six months. Was this claim exhausted? Yes, Your Honor. So the exhaustion doctrine should not apply here for at least three reasons. So it was exhausted or it doesn't apply? Well, Your Honor, essentially, yes, it does not apply here. The first reason is because this presents a pure question of law, and there is Fifth Circuit precedent on point here. For example, Momin v. Gonzalez, 447, Federal 3rd, 447, and this is a Fifth Circuit case from 2006. And in that case, the court addressed the challenge to the legality of an arriving alien adjustment of status regulation, which was considered a BIA. Why is that a pure question of law rather than a defect in the proceeding that must be exhausted? Well, it's a pure question of law, Your Honor, because it does not affect the merits of the underlying claim. It affects essentially how the claim is adjudicated through the BIA, but it does not affect the merits of the underlying claim. So in addition, Your Honor, this is essentially an ultra-virus question, and, of course, the doctrine of ultra-virus is an exception to the exhaustion doctrine. Also, how do we know that Megan Foote-Monski was not, didn't, her term had expired? Because the administrative record does not tell us when, I assume it's her term expired. That's an excellent question, Your Honor. In another case that is pending before this court, which has been granted oral argument in December, the government did provide evidence in the administrative record that indicates that Ms. Monski's term expired in October. I'm sorry, at the end of September, beginning of October. But that's not in this administrative record. Can we go roving around and try to figure these things out? Do we have authority to do that? Well, no, Your Honor, but it's linked. Linked in what way? It's linked on CMECF. What do you mean by that? I'm sorry. I'm guessing we have a designation on the DCN that says these two cases are, quote, linked, unquote. But that doesn't make one administrative record the other administrative record. And that's linked for our purposes, I think, are a little bit different. They're not consolidated. Understood, Your Honor, yes. But essentially, it's not just a question of what happened in the past. It's a question of whether, as a matter of law, the regulations would permit the renewal of a temporary board member beyond the initial six-month term. So, you know, in this case, we know the date of the decision from the BIA because that's included on the BIA. Right, December 18, 2020. Correct. And, you know, essentially, Your Honor. That's all we know. Well, that's all that's clear from this administrative record. Well, then how could we give your client relief when that's all we know? Well, Your Honor, I would note that on the BIA website, it also indicates when she was appointed. So, Ms. Monski, and I would ask that the court take administrative notice of that fact because it is a publicly available fact. But, you know, essentially, this is a question of law because of the fact that it raises the doctor to vultuveris, and it does not affect or relate to the underlying merits of the claim. It affects the way in which the cases would be adjudicated. Now, I would contrast this regulation or this regulatory provision with another provision, which is 8 CFR 1003.10e, which concerns the appointment of temporary immigration judges. That provision states, in pertinent part, that the director may designate or select, with the approval of the attorney general, former board members, former immigration judges, and certain others, for renewable terms not to exceed six months. So, essentially, Your Honor, here, what's present is the word renewable, and that term, renewable, is conspicuously lacking from the previous provision concerning the appointment of temporary board members. So the purpose of the temporary board member regulation was, and this was a regulation that was promulgated in 2006, was to permit the immigration appellate judges, the temporary board members, to produce more detailed decisions instead of, essentially, you know, producing kind of rubber stamp decisions. So it was to allow for more complex, more thorough analysis of more complex cases. The takeaway point here is that because the regulation permitting the appointment of a temporary board member does not include a provision that would allow the reappointment of a temporary board member, but because of the fact that that language concerning the renewability of terms of a temporary immigration judge is present in the analogous provision, the proper interpretation, you know, utilizing the interpretive canon of harmonious reading, is that the agency is not permitted to reappoint temporary board members beyond the initial six-month terms as a matter of law, and to conclude otherwise would render the word renewable in 1003.10e mere surplusage. Again, there's also an interpretive canon against surplusage. I guess it's the same question, but it seems like you should have reopened to include that information so that it would have been in the record. Well, Your Honor, essentially what we're asking for here is a remand. So if the court were to find in the petitioner's favor on this issue concerning whether, as a matter of law, temporary board members can be reappointed or can have their terms renewed beyond the initial six months, we would ask for a remand to the agency, and then the agency can address that. But we don't address these interesting questions in the abstract as much as we might want to do that. I understand, Your Honor. I know it's a difficulty with the record. Well, Your Honor, I will submit that there is nothing of record that indicates exactly when Ms. Monsky's term began, and there's nothing in this record that indicates exactly when her term ended. But what is clear is that Ms. Monsky's term, you know, as a matter of law, the regulation that is cited to and which is, you know, at issue in this case, does not allow the renewability of a temporary board member's term beyond the initial six months. I was tracking with you right up to the point where you said that the remedy you want is a remand, because I understand the reason you don't think you need to exhaust is because this is a pure question of law and you don't care what the board has to say about it. And the reason that it doesn't matter whether she was reappointed is because she couldn't be reappointed as a matter of law. Correct. So why would you want a remand? Because there's nothing for the board to fix. You know, it's either she can be reappointed or she can't. And if we hold that she can't, then the case is over, right? There's nothing to remand back to the agency. Well, here's the situation, Your Honor. If it turns out, if the court agrees with us, with this position, essentially this would constitute a jurisdictional defect. And because of the fact that it would be a jurisdictional defect, that would mean that this court would likely not have jurisdiction to consider the merits of our case and the questions of law, which are in my second point. Well, as you know, there's a lot of water under the bridge about whether ultraviarious claims sound in jurisdiction or not. So I'm not totally clear on why it would necessarily be a jurisdictional defect. You know, we've had cases, the Supreme Court's had cases on these questions. But I guess all of it comes back to a broader proposition that I'm not totally certain about, which is that none of these things that we're talking about, 1003.14, 1003.10, none of these sound in the INA, right? These are just provisions implementing regulations from the Department of Justice. That is correct, Your Honor, yes. So what is the best authority you have for the idea that you have an ultraviarious claim where the agency is acting outside the scope of the regulations it's written to sort of govern its own internal procedure? Well, Your Honor, just to be absolutely clear, our argument is not that the regulation is ultraviarious of the statute, but rather that the agency's action in reappointing the temporary board member in this case was ultraviarious of the regulation. And I completely understand that, and I'm wondering why that's not a problem for you. Because normally when we see these ultraviarious claims, it's because either an agency promulgates a regulation that conflicts with a statute or they're doing something that's inconsistent with the Constitution or something, you know, we've had these cases in removal authority. I'm not sure of a case where the agency promulgates a regulation that says we are going to do X and Y and Z and then they do some other thing and that that's an ultraviarious claim because it's inconsistent with their own implementing regulation. Well, Your Honor, essentially the issue is that whenever an agency promulgates regulations or any sort of rule, whether it's a regulation or sub-regulatory guidance, it must act in conformance with its own internal policies, with its own regulations. And, you know, as Justice Gorsuch so astutely observed in this Chavez v. Garland, words are how the law constrains power. So in the event that the agency promulgates a regulation and then does not comport with, you know, or does not take action in conformance with that regulation, it violates the law and it must be held to account. So I would also note, Your Honor, that the Fifth Circuit has issued a decision in a case called Collins v. Mnuchin. I have the site here. We're aware. Okay. And, of course, I'm sure Your Honor is also aware that that case cited the Supreme Court precedent decision in Wynn v. United States. So, you know, essentially the issue that I would raise, the reason I'm bringing this up, is because whenever there is a problem with, you know, whether the tribunal who issued the decision, in this case the Board of Immigration Appeals, was improperly constituted or whether it was disqualified for any reason, that is a form of structural error. I thought we had said, someone had said in some other agency context that, indeed, you could ask an agency to determine whether it was lawfully constituted. Am I misremembering that somewhere somebody has held that in the last year or two? I can't name a case off the top of my head. I would also like to note, to be completely frank, that I am referring to the concurring decision in Collins v. Mnuchin, but it did cite Supreme Court precedent, and that was at 593 of the Collins case. So, but if I may move on to my second point, because I see I only have two minutes here. The second point, which is, you know, the court should reach, you know, in the event that it does not find in our favor on the first issue, is that the agency committed legal error by requiring unusual or outstanding equities in this case. Now, this was covered on pages 11 to 15 of the petitioner's opening brief, and essentially our argument is that the immigration judge, whose decision was fully adopted pursuant to matter of furbano by the temporary board member, by the BIA decision, stated the correct legal standard but applied the wrong one. And there are a number of reasons why we believe this happened, but essentially the factors, I'm sorry, the legal issue is whether the standard was applied, whether the correct standard was applied. We contend that it was not, and the standard that should have applied was that found in matter of CBT, which is the BIA decision from 1998. And there are a number of factors here that would be included in that legal standard. Now, one of the reasons why we contend that the legal standard was not correctly applied was because of the fact that the legal standard that was cited to, which was matter of Sotelo, indicates that an immigrant need not show outstanding or unusual equities as a threshold issue, but rather that those issues should be considered in the more generalized weighing of the adverse factors and favorable equities. One of the reasons why, in fact, one of the salient reasons why we believe that the wrong standard was applied here was because the immigration judge who sat throughout three hearings in this case was not the same immigration judge who decided the case. And in support, I would cite to Pages 52 of the Record on Appeal, which shows the name of the immigration judge who decided the case, and I would contrast that with the immigration judge who heard the case, which is on Pages 221 of the Record on Appeal. I see that I'm out of time. I don't understand what the hardship is in this case that would justify relief, that he'd been helping to raise and support his wife's niece and nephews. That's very common. That never is enough. I mean, I don't understand that that's on the merits, even if we could get to the merits, given his criminal history, et cetera, that he could possibly win. So help, help. I see that I'm out of time. May I respond, Your Honor? Please. So this is an issue that was raised in the briefing to the Board of Immigration Appeals and is tethered to the legal issues raised in the briefs to this court, which is that there is a BIA precedent decision, a matter of arrogance, which states unequivocally that it is a showing of outstanding and unusual equities. In this context, which is 8 U.S.C. 1229B's subsection A for 42A cancellation of removal for persons who are already permanent residents, it is a showing of outstanding or unusual equities if a person has a period of long residence in the United States, as our client does here. He was in the United States for 27 years, the time that this case was decided by the immigration judge. And furthermore, whenever the immigrant has been taking care of U.S. citizen children, as he has here. Now, in this case, the thing that's even more extraordinary, and I would point to pages 42 and 50 of the Record on Appeal and the immigration judge's decision, is that the immigrant in this case, Mr. Ayala Chapa, also took on care of his nieces and nephew. Okay, we have your argument. Thank you very much, Your Honor. Good morning, Your Honor. I will jump straight to the second issue about the board member's ability to issue the decision in this case. But first, we'd just like to quickly note that Petitioner only noted that there were two issues in the case. I'm not sure if he intended to waive the Nis-Chavez-Pereira jurisdictional argument, but we would submit that that's fully briefed on our case, and precedent is controlling that the claim processing rule applies here. Regarding the temporary board member regulation in this case, I think that the conversation this morning demonstrates that this is not the proper vehicle to raise these types of claims. Challenges to the regulation itself really should be raised in an APA action in district court, where there can be a full record on the rulemaking that underlies the board member regulation. I don't understand why it would be an APA claim. They're not seeking to undo the regulation. They're just saying that the regulation wasn't followed. Well, that would be how to make an ultra-virus argument about the regulation itself. As Judge Alrod noted, there's no evidence here about how that regulation is ever applied. All we know is that the first board member decision in this case was issued by a temporary board member. The citation to the website was that her initial appointment started in April. The website, by the time I briefed the case, was updated, and she was no longer a temporary board member, so it's unclear when that website changed. But we did submit the addendum demonstrating that she was renewed for a second term in September that was to begin at the end of her first term, which would carry her through until April of the following year. So there is evidence that she did sign the decision while she was a temporary board member. And outside of that evidence, we don't know, based on any record evidence in this record or any kind of way to compile a record that would demonstrate how the agency could potentially violate that regulation. Well, you just got through saying we know she was renewed for a second term in September, so that isn't necessarily evidence that she'd already served some term. Correct. I guess my point is that the challenge itself is collateral to the removal determination in this case. And because it's not, as Patricia admitted, it's unrelated to the merits of this claim, the challenge is to the board member's composition and to the Board of Immigration Appeals' composition. And that challenge is properly brought in an APA case where there can be a record about how that regulation is applied, what the purpose behind the regulation was. We could look to the notice and commenting of the rulemaking in the 1988 rule that originally put the board member regulation in the CFR. We could look to any sort of claims and record about how many temporary board members there are. And so what relief could the APA grant to this petitioner? Well, if somebody were to bring an APA claim in district court. Do they have any authority to vacate the BIA order here? Not to vacate the BIA order. Okay. Well, to the extent that that's what's requested here, that's not even the remedy that was requested. There's been no prejudice articulated in this case. The petitioner filed a motion to reconsider before the board, and a permanent board member signed that decision. Nowhere in that motion to reconsider was any sort of allegation that Ms. Monski did not have the authority to issue the first decision. So any sort of allegation that that was legally erroneous was waived at that point because they did not argue before the board that the prior decision that they were challenging was an error. So while I don't think that there's an exhaustion issue in so far as raising an ultra-virus argument because I don't think the board could necessarily speak to its own authority to the appointments of other board members. I don't think if somebody were to raise on appeal to the board an argument saying the board member cannot be a temporary board member because they don't have the authority. I don't think that the board would have authority itself to articulate to rule on that issue. Why not? Because it seems like they would say, these are our rules. Oh my goodness, this doesn't follow our rules. We're the people that enforce our own rules. These are our own regulations. This is a regulation from our agency. Why wouldn't it be the right people to say, we're not following our rules. We better fix that. Because it's not a rule that they're following. Because the regulation is about the composition of the board and their authority and not... Well, we'd say, I'm not eligible to sit. Just if I was a judge and I should have been recused, you'd have the responsibility to say, oh my goodness, I'm ineligible. Just in the duty of candor, I believe that the board would say that they don't... I recognize that Chief Judge Richman had tried to remember a case recently where agencies could question their own authority. The board does not question its own authority. It routinely declines to answer those questions when presented. Maybe it should do some self-reflection. That's possible. Like we all should do from time to time. That's possible. I just would not argue that a failure to exhaust because I'm not sure that the board would address that question. So I think if it were presented, the board would say we don't have authority to answer that. And so I wouldn't put a burden on someone to exhaust a question that I don't think the board would answer. But I do think that it demonstrates why it's not the appropriate vehicle to raise those kind of claims. But even if it were the appropriate vehicle, as I noted, there's no assertion of prejudice here. And so there's no remedy that could be considered. And even if they did assert prejudice, the motion to reconsider would have fixed any of that. If there was some sort of problem with the first decision, that would have been the appropriate time to bring it to the agency's consideration. Counsel, I saw in the footnote of your red brief where you say please take judicial notice of this reappointment memorandum. I understand that the attorney general signs the reappointment memorandum. I assume he signs also the appointment memorandum for a temporary board member. Is that true? I don't know the answer to that. So that's not in the record either? No, I don't have access to that. Can you tell me what the distinction is between who appoints permanent board members? Is it the attorney general for that too? Yes. Is there a different procedure for the appointment of a temporary board member versus a permanent board member? Yes. And what is that difference? Some of this is based on my own knowledge and not a record. So I would caution that if I'm incorrect, I will submit a letter to the court if I'm incorrect on any of this. But when a board member is constrained by regulation, there's currently 23. And so if there is an opening, the Executive Office for Immigration Review will post a posting. It's usually internal, but they will post a posting on USAJOBS, and people can apply for that posting. It then goes through a full application process, just as immigration judges do or any other federal government employee. Temporary board members is not a new hire position. It's essentially, I would equate it to almost like a detail within the federal government. And so it's for specific people. The regulation specifies that it's retired immigration judges, retired ALJs, current immigration judges, and certain Department of Justice employees who have been there for longer than 10 years. They can apply for that position. So it's different eligibility requirements. They can apply for that position, and it's for a fixed period of six months for each term. And a board member applies for a permanent job that comes with all of the benefits and pay of that job. And so there are two different positions that are applied for separately, posted for separately. I assume they're interviewed by different people. I would assume that there's different background checks that are completed as part of that process. But I don't know the information on that. All of which could be developed if this case were brought as an APA action, and those are part of the allegations that were raised in the complaint. I will briefly just address the temporary immigration judge regulation, only to say that the more detailed regulation that was issued in 2014 should not be used by this court to impose a term limit in the regulation that was first introduced in 1988. That was a much less detailed version. The two regulations were proposed under different notice and comment, or different rulemaking. In fact, the temporary board member was not subject to notice and comment because it was an internal rule. And the additional term of renewable is not the only additional term in that temporary immigration judge regulation. The temporary immigration judge regulation is much more detailed, and it has a lot of additional terms, none of which should be read into the other regulation. And then regarding the cancellation of removal, this court has substantial jurisprudence about the lack of jurisdiction to review the discretionary weighing of factors. And that is ultimately what is raised in this case. Although it's articulated as the application of an incorrect standard, when you look carefully at the decisions, the immigration judge did not apply an incorrect standard, and the board did not apply an incorrect standard. The immigration judge referenced unusual, exceptional factors that would need to be considered if significant negative factors were also present. But the board, which is the decision before this court, adopted the immigration judge's factual findings, considered the negative equities, considered the positive equities, weighed them, and reached a conclusion. That's proper. Was that a de novo review? De novo review, substantial evidence. What was the board conducting? De novo. The board reviews discretionary determinations de novo. And then it can adopt the immigration judge's fact-finding. If it does not adopt the immigration judge's fact-finding, another example would be that it would find no clear error in the factual findings and then make its own analysis and go through the steps. But here, because it agreed with the immigration judge's analysis, it adopted the factual findings, adopted the conclusion, and demonstrated that it considered all of the factors presented. The court's recent decision in Castillo-Gutierrez, in Trejo, in Nastase, all of those cases demonstrate that this is a discretionary determination that's outside of this court's review. If the court has no further questions, we rest on our briefs. Thank you. May it please the Court. I'd like to respond to a few of the government's contentions regarding the regulation. We contend in this case that prejudice is not a prerequisite for this court to be able to render a decision in our favor. One of the—you guys are aware of the Mnuchin case. That case, in its concurrence— Let me just say, I'm not offended by you guys, but some other judges not present today would be, so I'm just telling you that for future reference. Yes, Your Honor. Well, in that case, in the concurring opinion, there's a reference to Win v. U.S. The citation is 539 U.S. 69. In that case, the Supreme Court invalidated the Ninth Circuit panel judgment because there was a judge on that panel that wasn't an Article III judge. And the court didn't make a finding of prejudice because they found that the judicial composition— when the error alleged was the improper composition of that court, they found that no prejudice was needed. They looked to the idea that when a court body issues a decision, that it's following all of its own rules. Furthermore, even if we were to assume in this case that prejudice was required to have this claim go in our favor, we argued that we have done so. In this case, there is a reasonable probability that a different board member might have issued a different decision simply because of the de novo standard of review of discretionary determinations. The clear error is not the standard when they're reviewing a discretionary denial. So the mere fact that Board Member Monsky issued a decision wouldn't preclude a new decision. Furthermore— Counsel, can I ask a question? When you're talking about Collins v. Mnuchin, are you talking about our en banc opinion, or are you talking about the Supreme Court case called Collins v. Yellen? We're talking about the en banc opinion. We would contend that it was overturned on different grounds, but we are aware of the— So Collins v. Yellen has a whole discussion about what the remedy is for these sorts of claims, just assuming that these are the same kind of claim, which obviously the government contests. And you could reasonably say that they are different. But an ultra-various claim brought by a petitioner challenging the composition of a government adjudicatory board, there's an entire discussion in the majority opinion of Collins v. Yellen that is different than the one from our en banc court. So I'm not sure—I'm just—I'm not sure I even understand. I want to make sure I understand what you're arguing, and I'm not sure I get it. We are—we are arguing something analogous to what occurred in Wynn. We understand the differences of that case. It also dealt with statute, and it dealt with Article III, Article IV judges. There's more, I guess, for the broad proposition that—and there have been times in the past where courts have invalidated these judgments, notwithstanding a finding of prejudice. So your point is you think that after Collins v. Yellen, the Supreme Court's decision to us, that we can vacate agency action without showing a prejudice? I would have to update the court on that particular question. Assuming arguendo that you could vacate and go back and remand and get a do-over, we also have a doctrine in the Fifth Circuit in the immigration context about futility. We do not require this remand when it's abundantly clear what the outcome would be if someone were to relook at these facts. Why isn't the futility doctrine an issue here, given the overwhelming problematic factual posture that your client finds himself in? Yes, Your Honor. We would contend that the fact that the board in this case would review the claim completely de novo would be one factor as to why it wouldn't be necessarily futile. Each board member could come to a reasonable different conclusion, and we're not in a situation where we have to go beyond a clear error standard where we have to effectively accept the fact that it's true, except if there's reasonable minds that could differ. So we would argue that the de novo standard is something that would preclude the applicability of this case of futility. Are you saying that it's not true that your client, as a criminal and drug, get all of this issue? No, we acknowledge the criminal history. We do. Okay. And that's my time if you have no other questions. Thank you, Counsel. Thank you, Your Honor.